[Cite as *State v. Tanner*, 2017-Ohio-874.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO. 9-16-36

    v.

GREGGORY TANNER,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 2016CR0062

Judgment Affirmed

Date of Decision: March 13, 2017

APPEARANCES:

    *Joel M. Spitzer* for Appellant

    *Kevin P. Collins* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Greggory Tanner ("Tanner"),[1] brings this appeal from the June 3, 2016, judgment of the Marion County Common Pleas Court sentencing Tanner to a 7-year prison term after Tanner was convicted of Trafficking in Heroin in violation of R.C. 2925.03(A)(1)/(C)(6), a felony of the fifth degree, Possession of Cocaine in violation of R.C. 2925.11(A)/(C)(4), a felony of the fifth degree, Possession of Heroin in violation of R.C. 2925.11(A)/(C)(6), a felony of the second degree, and Possession of Cocaine in violation of R.C. 2925.11(A)/(C)(4), a felony of the third degree. On appeal, Tanner argues that his convictions for Possession of Cocaine and Possession of Heroin resulting from the search of a residence alleged to be Tanner's on February 4, 2016, were against the manifest weight of the evidence and that the trial court erred by admitting certain evidence against Tanner at trial, which he claims was not timely disclosed by the prosecution.

*Facts and Procedural History*

{¶2} On March 10, 2016, a 4-count superceding indictment was filed against Tanner alleging Trafficking in Heroin in violation of R.C. 2925.03(A)(1)/(C)(6), a felony of the fifth degree (Count 1), Possession of Cocaine in violation of R.C. 2925.11(A)/(C)(4), a felony of the fifth degree (Count 2), Possession of Heroin in

---

[1] Tanner was originally indicted as "Gregory" Tanner but the indictment was later amended to "Greggory" Tanner. Although most of the filings and journal entries following the amendment to the indictment contain the "proper" spelling of Tanner's first name, his final judgment entry of sentencing spelled his first name "Gregory." Regardless, we will refer to him as "Tanner."

violation of R.C. 2925.11(A)/(C)(6), a felony of the second degree (Count 3), and Possession of Cocaine in violation of R.C. 2925.11(A)/(C)(4), a felony of the third degree (Count 4).[2] With regard to Count 1 of the superceding indictment, it was alleged that on August 3, 2015, Tanner sold .41 grams of heroin to a confidential informant. As to Counts 3 and 4 of the superceding indictment, it was alleged that a search conducted pursuant to a warrant executed at 364 Olney Avenue in Marion, Ohio, on February 4, 2016, uncovered both heroin and cocaine in a pocket of a "hoodie" jacket in the master bedroom. The State alleged that the residence was Tanner's and that the drugs were his. Count 2 of the superceding indictment alleged that that when Tanner was arrested on an outstanding warrant related to this case he was found in possession of cocaine.

{¶3} Tanner originally pled not guilty to the charges, but on the morning of his trial, he elected to enter guilty pleas to Counts 1 and 2 of the indictment, Trafficking in Heroin and Possession of Cocaine. Neither of these counts were related to the drugs that were found during the execution of the search warrant at 364 Olney Avenue on February 4, 2016.

{¶4} Tanner then proceeded to a jury trial on Counts 3 and 4 against him alleging Possession of Heroin and Possession of Cocaine. At trial, the State presented the testimony of seven witnesses and introduced a number of exhibits then

---

[2] Tanner was originally indicted on February 25, 2016, in a 3-count indictment. The superceding indictment contained all three of the original counts and added an additional count of Possession of Cocaine.

rested its case.[3] Tanner called two witnesses on his behalf and rested his case. Ultimately the jury convicted Tanner of Possession of Cocaine and Possession of Heroin as indicted.

{¶5} On June 2, 2016, Tanner's sentencing hearing was held. Tanner was sentenced to serve 12 months in prison on Count 1, Trafficking in Heroin, 12 months in prison on Count 2, Possession of Cocaine, a mandatory 7-year prison term on Count 3, Possession of Heroin, and 30 months in prison on Count 4, Possession of Cocaine. All prison terms were ordered to be served concurrently resulting in a total prison sentence of 7 years. A judgment entry memorializing Tanner's sentence was filed June 3, 2016. It is from this judgment that Tanner appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. 1**

**THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING (OVER OBJECTION) SEARCH WARRANT SEARCH PHOTOS AND FACEBOOK PHOTOS WHICH WERE UNTIMELY DISCLOSED BY THE PROSECUTION TO THE DEFENSE.**

---

[3] The trial court did not permit the State to introduce evidence of the two crimes to which Tanner pled guilty, which were related to Tanner selling heroin and then later possessing cocaine when he was arrested.

*First Assignment of Error*

{¶6} In Tanner's first assignment of error, he argues that his convictions for Possession of Heroin and Possession of Cocaine were against the manifest weight of the evidence.[4] Specifically, he contends that there was no evidence that the drugs found at 364 Olney Avenue were Tanner's, or that the residence itself was his.

Standard of Review

{¶7} In reviewing whether the trial court's judgment was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required."[5] *Thompkins* at paragraph 4 of the syllabus.

---

[4] Tanner does not challenge his convictions for Trafficking in Heroin and Possession of Cocaine, which he pled guilty to.
[5] Tanner misstates this point in his brief to this Court. He claims that this Court must reach a unanimous decision regardless of the outcome. However, we must only reach a unanimous decision if we *reverse* a jury

Relevant Statutes

{¶8} In this case, Tanner challenges his convictions for Possession of Cocaine and Possession of Heroin. The crime of Possession of Cocaine in the amount specified in this case is codified in R.C. 2925.11(A)/(C)(4)(c), and reads,

> **(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**
>
> **\* \* \***
>
> **[(C)](4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:**
>
> **\* \* \***
>
> **(c)   If the amount of the drug involved equals or exceeds ten grams but is less than twenty grams of cocaine, possession of cocaine is a felony of the third degree \* \* \*[.]**

{¶9} The crime of Possession of Heroin in the amount specified in this case is codified in R.C. 2925.11(A)/(C)(6)(d), and reads,

> **(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**
>
> **\* \* \***
>
> **[(C)](6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession**

---

verdict as against the manifest weight of the evidence. An affirmance of a jury verdict need not be unanimous.

**of heroin. The penalty for the offense shall be determined as follows:**

**\* \* \***

**(d)  If the amount of the drug involved equals or exceeds one hundred unit doses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams, possession of heroin is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree.**

Relevant Trial Testimony

{¶10} At trial, the State called seven witnesses in order to convict Tanner of Possession of Cocaine and Possession of Heroin including a number of police officers who participated in executing a search warrant at 364 Olney Avenue on February 4, 2016.  During the search, officers located approximately 12.9 grams of suspected cocaine and approximately 40.8 grams of suspected heroin in a "hoodie" jacket in the upstairs "master" bedroom.  Also during the search of the residence, officers located Suboxone packets, digital scales, headache powder, and numerous plastic baggies that were tied and "torn off."  Officers testified that the scales were used to weigh drugs, the headache powder was used to "cut" the drugs, and the baggies were used to package the drugs for sale.

{¶11} Throughout the house, officers uncovered some of Tanner's personal documents including a state identification card,[6] which was found on a glass table

---

[6] The address on the ID card listed Tanner's residence as 410 Glad Street.  Dusty Maag testified that 410 Glad Street was the residence of the parents of Tanner and Maag.

in the living room, and Tanner's birth certificate, which was located in a kitchen drawer. The trial court allowed officers to testify that they found a lease with Tanner's name on it in the residence, and the trial court allowed officers to testify that they found some documents addressed to Tanner in the bedroom where the drugs were found, specifically, electric, gas, and water bills. However, the trial court did not allow testimony as to what address was printed on the documents that the officers found. Similarly, the trial court did not allow the documents themselves to be introduced into evidence.

{¶12} Tanner was not present during the search of 364 Olney Avenue; however, Tanner's brother, Dusty Maag, was present when the search was conducted.[7] According to Maag, Tanner had left the residence shortly before the search was conducted. Maag testified that the residence was Tanner's and that Tanner let Maag stay there in exchange for selling drugs for him. Maag testified that at times Tanner made him go hide when certain people were over because Maag was not allowed to see who they were. Maag also testified that Tanner slept in the master bedroom where the drugs were found and that the clothes that contained the drugs were Tanner's. Facebook photos were introduced into evidence showing Tanner wearing clothing that appeared similar to, if not the same as, the clothing in the master bedroom closet containing the drugs.

---

[7] Maag testified that his parents adopted Tanner when Tanner was an infant, and that the two were essentially brothers, albeit not blood related.

{¶13} When officers entered 364 Olney Avenue, Maag was on the floor of what officers called the dining room. Maag testified that he often slept there by a heating vent because he did not have a bed elsewhere in the house. Maag was found with heroin on him, and he was charged for that possession offense. He was incarcerated at the time of trial.

{¶14} A jailhouse call was played between Maag and Tanner. In the beginning of the call it was announced that the call was being recorded and then during the call Tanner repeatedly made statements that the drugs were not his. In fact, Tanner continuously brought the conversation back to that point. While on the call Maag told Tanner that he did not have to worry about Maag saying anything and that Tanner did not have to worry because "if all else fails I'll take out for you." (Def.'s Ex. A). Notably, it was referenced multiple times during the call that the residence was Tanner's and that Tanner's name was on the lease. At the very end of the call, Maag made the statement that he signed the warrant inventory sheet and that by doing this he had stated that all of the taken property was his.

{¶15} In addition to the jailhouse phone call, some text messages purportedly attributed to Tanner were also introduced into the record, wherein a phone attributed to Tanner sent messages such as, "he is fuckin snitching..we made a deal man…honnor [sic] it." (State's Ex. 56).

{¶16} Officers also testified that a woman named Taesha Davis was present during the search. Officers indicated Davis was on the ground floor of the residence, that she did not have drugs on her and that there was no evidence that she lived there. Officers indicated that after they looked into Davis, they did not charge her with any crime.

{¶17} A lab report was stipulated to and entered into evidence. It indicated, *inter alia*, that there were two plastic baggies with a substance containing heroin in the amount of 27.18 grams, another plastic baggie with a substance containing heroin in the amount of 11.2 grams, and a plastic baggie containing an "off-white substance" in the amount of 15.7 grams that was "found to contain Cocaine." (State's Ex. 2).

Analysis

{¶18} On appeal, Tanner argues that although the State presented evidence that heroin and cocaine were found at 364 Olney Avenue during the search, the State did not produce evidence that the drugs were Tanner's or that Tanner was connected to the residence. Tanner also argues that in the jailhouse call between Maag and Tanner, Maag admitted that the drugs were his. Thus Tanner contends that the evidence weighed against his convictions.

{¶19} Contrary to Tanner's arguments, the State presented a significant amount of testimony and exhibits linking Tanner to the residence at 364 Olney

Avenue and the drugs found in the master bedroom. Officers testified that they found a number of Tanner's personal documents throughout the house, including in the master bedroom and the closet where the drugs were found. Furthermore, Maag affirmatively testified at trial that the room where the drugs were found was Tanner's and that the clothes the drugs were found in belonged to Tanner. Maag also testified that he sold drugs for Tanner in exchange for housing and to get his "fix."

{¶20} Moreover, although Tanner contends that Maag admitted the drugs were his in the jailhouse call, Maag actually stated that he would "take out" for Tanner, not that the drugs were his. Maag did state that he signed the search warrant inventory sheet, but this was explained by the officers as routinely done by someone present during a search. In addition, the jury was specifically instructed, over objection by the State, to evaluate Maag's testimony with "grave suspicion," and to weigh it with "great caution," yet the jury still found Maag credible when pairing his testimony with the corroborating evidence. Given the evidence presented, and being mindful of the recent decision of the Supreme Court of Ohio on reconsideration in *State v. Gonzales*, --- Ohio St.3d ---, 2017-Ohio-777, we cannot find that the jury clearly lost its way in determining that Tanner possessed the cocaine and heroin in the amounts specified in the indictments. Therefore, Tanner's arguments are not well-taken, and his first assignment of error is overruled.

*Second Assignment of Error*

**{¶21}** In Tanner's second assignment of error, he argues that the trial court erred by admitting certain photographs that he claims were not timely disclosed by the State. Specifically, Tanner claims that the State provided photographs from the executed search warrant and photographs taken from Tanner's Facebook account "on the eve of trial." (Appt.'s Br. at 10).

**{¶22}** Criminal Rule 16 governs discovery and it provides, in pertinent part,

> **Upon receipt of a written demand for discovery by the defendant, and except as provided in division (C), (D), (E), (F), or (J) of this rule, the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule[.]**

**{¶23}** To reverse a defendant's conviction due to a discovery violation, it must be shown that " '(1) the prosecution's failure to disclose was a willful violation of the rule; (2) foreknowledge of the information would have benefited the accused in preparing a defense, and (3) the accused * * * suffered prejudice.' " *State v. Wangler,* 3d Dist. Allen No. 1–11–18, 2012–Ohio–4878, ¶ 108, quoting *State v. LaMar,* 95 Ohio St.3d 181, 2002–Ohio–2128, ¶ 38, citing *State v. Joseph,* 73 Ohio St.3d 450, 458 (1995).

{¶24} In this case, Tanner filed a written discovery demand on March 2, 2016. On that same date, the State filed a response to discovery, indicating that it had provided defense counsel with, *inter alia*, a "CD" related to the search warrant. (Doc. No. 13). Later, on March 24, 2016, the State filed another response to discovery indicating more specifically that it had provided defense counsel with "CD- Photos of Search Warrant[.]" (Doc. No. 25).

{¶25} On the morning that trial was scheduled to begin in this case, the trial court and both parties had a discussion regarding what Tanner claimed was untimely disclosed evidence. Tanner argued that, despite the State's claimed discovery responses, he was not provided with photographs that were taken during the execution of the search warrant, and that he had just been made aware on the Friday of the week prior to the trial that the State discovered Facebook photographs of Tanner purportedly wearing the clothes from the closet that the drugs were found in.

{¶26} The State contended that it only discovered the Facebook photographs the day before they were disclosed to the defense. In addition, the State contended that it had provided Tanner's counsel with a CD copy of the photographs from the search warrant and that if Tanner could not access them he could have notified the State long before the days immediately before trial.

{¶27} Ultimately the trial court permitted the State to use the photographs from the search and from Facebook. With regard to the Facebook photographs, the trial court determined that they were disclosed as soon as they were discovered, and with regard to the other photographs the trial court maintained that discovery listed the photographs and counsel was aware of them, that he could have requested them if he did not have them and that he never did. The trial court also determined that defense counsel was aware of the subject matter of the photographs given the evidence that was collected.

{¶28} Nevertheless, the trial court stated that it would permit defense counsel time to talk to Tanner and his family members before he presented his case-in-chief if defense counsel needed to do further investigation. Notably, the following day when defense counsel proceeded to present Tanner's case, he did not indicate he needed more time to investigate the matter.

{¶29} On appeal, we can find no error with the trial court's decision to permit the photographs taken during the execution of the search warrant to be introduced at trial. Similarly, we can find no error with the trial court's determination to allow the State to use the recently discovered Facebook photographs.

{¶30} With regard to the search warrant photographs, the State indicated that it had provided discovery to the defense, including a CD containing those photographs. Even assuming the defense did not receive that CD, or that the

photographs on the CD were not accessible, defense counsel did not notify the State of this until just before trial. Moreover, defense counsel was aware of the subject matter of all of the photographs, so it is not clear how he was prejudiced even if there was error.

{¶31} As to the Facebook photographs, it appears from the record that they were disclosed as soon as they were discovered, constituting continuing discovery. Nevertheless, the trial court did indicate it would give Tanner's counsel time to talk to Tanner and his family members regarding the photographs, and Tanner's counsel did not indicate before presenting his case-in-chief that he needed more time to prepare. For these reasons we can find no error here, let alone prejudicial error. Tanner's arguments are thus not well-taken, and his second assignment of error is overruled.

*Conclusion*

{¶32} For the foregoing reasons, Tanner's assignments of error are overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/jlr**